# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ALI PINEDA, | Case No. 1:15-cv-693 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J |
| v. | |
| RAYMOND BERRY, *et al.*, | |
| Defendants. | |

## MEMORANDUM ORDER

This civil action is before the Court on Plaintiff Ali Pineda's Motion *in Limine* and/or for a Protective Order (Doc. 70), and the parties' responsive memoranda (Docs. 77, 78.) For the reasons that follow, Plaintiff's Motion for a Protective Order will be GRANTED.

### I.  BACKGROUND

In this civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff Ali Pineda accuses Hamilton County Sheriff's Deputies Roy Berry, William Cotton, and Gene Nobles ("County Defendants") of use of excessive force and failure to provide medical assistance. He alleges that, in the early morning of November 10, 2013, one of them struck him in the head with a baton in the course of breaking up a fight at the Inner Circle nightclub, where the deputies were working a private security detail. Pineda also sues PNA, Inc. ("PNA") doing business as Inner Circle.

1

### A. Plaintiff's Deposition

County Defendants and PNA deposed Plaintiff on July 26, 2017. (*See* Ali Pineda Rodriquez Dep., Doc. 76.) In some instances on his own, and in other instances at the instruction of his counsel, Plaintiff declined to answer questions about whether he is a United States citizen,[1] how he arrived in the United States,[2] the name of his employer,[3] whether he has a social security number,[4] and whether he has a driver's license or any other form of identification.[5] In the course of cross-examination, counsel for County Defendants initiated a call to the Court and these evidentiary rulings followed:

<u>The Court sustained Plaintiff's objection to questions about his citizenship</u>. Plaintiff's counsel argued that questions regarding his citizenship and immigrant status—whether legal or illegal—are not relevant to his Section 1983 claims and "potentially could lead to deportation or criminal prosecution." (*Id.* at PageID 1277 (36:1–19).) In response, counsel for County Defendants maintained "it goes to the credibility of Mr. Pineda if he has entered this country illegally." (*Id.* at PageID 1278 (37:3–7) ("What could be more of an indication of credibility if someone has committed a felony? It's a felony to enter this country illegally.").) The Court did not order Plaintiff to answer. (*Id.* at PageID 1278 (38:3–12) ("[I]n criminal matters, I don't ask the citizenship of any of the defendants for the very reasons that Mr. Mezibov stated, so I'm not going to order that [Plaintiff] answer it in a civil matter."); *see id.* at PageID 1280 (46:21–23).) <u>The Court also sustained Plaintiff's objection to questions about a social security number based on relevance</u>. (*Id.* at PageID 1280 (46:5–21) ("Yeah, I'm with Mr.

---

[1] Doc. 76 at PageID 1270–71 (7:10–9:10).
[2] Doc. 76 at PageID 1271 (9:14–10:8).
[3] Doc. 76 at PageID 1271 (12:11–17), 1273 (19:2–20, 20:8–11).
[4] Doc. 76 at PageID 1272 (15:17–24).
[5] Doc. 76 at PageID 1272 (16:3–19).

2

Mezibov on the Social Security issue. I'm more protective than others on that number. I don't think it's relevant to any particular case, except in limited circumstances.").) <u>The Court additionally sustained Plaintiff's objection as to whether he has a driver's license</u>. (*Id.* at PageID 1280 (46:23–24); *see id.* at PageID 1279 (42:19–44:9).)

However, <u>the Court overruled Plaintiff's objection regarding the relevance of the name of his employer</u>.[6] (*Id.* at PageID 1282 (53:20–23) ("As to the work, Mr. Vollman can ask the name of [Plaintiff's] employer, and the Court knows that he will not use that information to harass the employer or Mr. Pineda[.]").) Then further discussion ensued with respect to whether allowing County Defendants to later contact Plaintiff's employer might circumvent "the Fifth Amendment issue that Mr. Pineda raised as to his citizenship." (*Id.* at PageID 1282 (55:20–56:6).) Counsel for PNA asked if the Court was "finding or ruling" that Plaintiff had invoked his Fifth Amendment protection. (*Id.* at PageID 1283 (57:14–58:3).) The Court responded that such a determination was unnecessary inasmuch as Plaintiff, through his counsel, "had clearly stated that he is invoking the Fifth." (*Id.* at PageID 1283 (58:4–9).) Plaintiff's counsel clarified:

> There is the potential in there for criminal consequences and/or some other consequences, immigration status, what have you. And to the extent that these questions elicit or intend to elicit answers which may have negative consequences in those areas, **then yes, [Plaintiff] is invoking the Fifth**.

(*Id.* at PageID 1283 (58:10–16) (emphasis added).) The proceedings with the Court concluded, and testimony resumed. At this point Plaintiff formally invoked his Fifth

---

[6] In support of his objection, Plaintiff's counsel clarified that his client was not "asking for any compensation for that period of time [about a month] for his missing work" in the wake of the injury alleged. (Doc. 76 at PageID 1281 (49:3–16); *see id.* at PageID 1273 (20:8-24).)

Amendment right against self-incrimination[7] (and renewed his objections based on relevance) in reply to questions asking where he works, whether he is a United States citizen, whether he has a driver's license, and for his social security number.  (*Id.* at PageID 1283 (59:13–60:11).)

## B. Eyewitness Depositions

County Defendants and PNA deposed eyewitnesses Luis Alonzo Avila (Doc. 73), Juana Elia Gomez (Doc. 74), and Dilcia Arias Hernandez[8] (Doc. 75) on September 9, 2017.  Similar issues came up during their testimony, but, because the depositions were taken on a Saturday, counsel did not contact the Court for evidentiary rulings.[9]  The deponents either declined to answer immigration-related questions on their own, or Plaintiff's counsel instructed them not to answer.  None of the eyewitnesses answered questions regarding how he or she came from Honduras to the United States.[10]  Avila also did not answer whether he is a citizen or legal resident of the United States,[11] how much he is paid by his employer,[12] and—particularly vexing to counsel for County Defendants—whether he ever has been charged with a crime.[13]  Gomez did not answer whether she had a "work permit" when she arrived in the United States in 1996.[14]  Hernandez did not answer whether, when she came from Honduras to the United

---

[7] "No person . . . shall be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. amend. V.
[8] Hernandez refers to herself as Plaintiff's "wife" with the qualification, "We're not married, we're just together."  (Doc. 75 at PageID 1261 (6:20–24).)
[9] *See* Doc. 73 at PageID 1249 (15:8–12), 1250 (19:7–20:12); Doc. 75 at PageID 1262 (9:21–23), 1266 (26:18–23).
[10] Doc. 73 at PageID 1247 (7:20–8:8) (Avila); Doc. 74 at PageID 1254 (5:9–18) (Gomez); Doc. 75 at PageID 1261 (7:24–8:17) (Hernandez).
[11] Doc. 73 at PageID 1247 (8:9–17, 21–23).
[12] Doc. 73 at PageID 1247–48 (8:24–9:4).
[13] Doc. 73 at PageID 1247 (5:22–6:13, 8:18–20), 1249–50 (15:8–20:12).
[14] Doc. 74 at PageID 1254 (6:1–10).

4

States, she came with Plaintiff[15] or whether she has a driver's license and currently drives a car.[16]

### C. The Pending Motion

Plaintiff's pending motion is alternatively styled as one *in limine* and/or for protective order. (Doc. 70 at PageID 1231.) He asks the Court to prohibit questions "in any further court proceedings" about his immigration status or the immigration status of the eyewitnesses to the events at the Inner Circle nightclub on November 10, 2013. (*Id.* at PageID 1232.) He also asks the Court to prohibit defense counsel from "referring to, basing arguments on, or drawing inferences from" the fact that he has invoked his Fifth Amendment right against self-incrimination with respect to questions about his immigration status. (*Id.*) County Defendants respond that testimony about immigration status is probative of a witness's credibility and character for truthfulness or untruthfulness, and, as such, admissible under Fed. R. Evid. 607 and 608(b). (Doc. 77 at PageID 1294–96.) Plaintiff replies that County Defendants misunderstand the need for "specific instances" of witness conduct necessary to invoke Rule 608(b). (Doc. 78 at PageID 1300–03.) And, at any rate, even if relevant, the probative value of Plaintiff's immigration status is substantially outweighed by the likely prejudicial effect on the proceedings in the eyes of a jury. (*Id.* at PageID 1303.)

## II. STANDARD FOR GRANTING A PROTECTIVE ORDER

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). But upon a showing of "good cause," a court may issue an order "to protect a party or person from annoyance,

---

[15] Doc. 75 at PageID 1267 (29:13–23).
[16] Doc. 75 at PageID 1263 (14:24–15:5). Hernandez also did not answer how she arrived at her deposition that day. (Doc. 75 at PageID 1263 (15:6–8), 1266 (26:4–27:12).)

5

embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D); *see Degen v. United States*, 517 U.S. 820, 826 (1996) (referencing a district court's "usual" authority to manage discovery in a civil action, "including the power to enter protective orders limiting discovery as the interests of justice require"). The party requesting the protective order bears the burden of establishing good cause. *Galaviz-Zamora v. Brady Farms, Inc.,* 230 F.R.D. 499, 501 (W.D. Mich. 2005) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To establish good cause, the movant "must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (quoting *Nix*).

### III. ANALYSIS

#### A. Good Cause Showing

As discussed below, the Court finds that Plaintiff has established good cause and is entitled to a protective order.

On cross-examination, Plaintiff and each eyewitness testified that he or she was born in, or came to the United States from, Honduras. Questions followed regarding citizenship and immigration status, which were challenged initially for relevance by Plaintiff's counsel and later avoided by Plaintiff with an assertion of Fifth Amendment privilege. During Plaintiff's deposition, counsel for County Defendants thought aloud about whether Plaintiff lacked standing to bring this civil action "if he had no legal status in this country." (Doc. 76 at PageID 1270 (7:17–8:23).) No motion challenging Plaintiff's standing has been filed, however, and the Court notes that this line of

reasoning is at odds with the plain language of Section 1983, which provides a cause of action to "any citizen of the United States **or other person within the jurisdiction thereof**." 42 U.S.C. § 1983 (emphasis added); *see Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 862–63 (D. Md. 2017).

As the Court indicated during Plaintiff's deposition, discovery related to his citizenship, immigration status, social security number, and driver's license are not relevant to his right to recover for the alleged use of excessive force and failure to receive medical assistance at the hands of County Defendants. Moreover, the Court is mindful of the "*in terrorem* effect of inquiring into a party's immigration status and authorization to work in this country when irrelevant to any material claim because it present a 'danger of intimidation [that] would inhibit plaintiffs in pursuing their rights.'" *Rengifo v. Erevos Enters., Inc.*, No. 06 Civ. 4266(SHS)(RLE), 2007 WL 894376, at *2 (S.D.N.Y. Mar. 20, 2007) (quoting *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002)). The plaintiff in *Rengifo* brought suit under the federal Fair Labor Standards Act and the state equivalent to recover unpaid overtime wages, as well as under 42 U.S.C. § 1981 alleging race discrimination. *Id.* at *1. Even though an employment case, Rengifo's "immigration status and authority to work" was found to be a "collateral" issue. *Id.* at *2. Good cause supported a protective order, because, otherwise, an undocumented worker might withdraw from the suit rather than produce documents that could lead to deportation. *Id.* (citations omitted); *see Galaviz-Zamora*, 230 F.R.D. at 502. The case for a protective order is even more compelling here, where Plaintiff Pineda's employment is *completely unrelated* to whether he was a victim of excessive force and a lack of medical assistance.

7

County Defendants contend that Plaintiff's immigration status is relevant on the issue of credibility. While the Court agrees with the general proposition that a witness's credibility is always at issue, "**unlimited** exploration on the subject is [not] permitted." *Galaviz-Zamora*, 230 F.R.D. at 502 (citing Fed. R. Evid. 403, 404, 608) (emphasis in original). Especially with respect to immigration status, the chilling effect on litigants bringing suit and witnesses coming forward far outweighs "whatever minimal legitimate value such material holds for Defendants." *Id.* When immigration status does not motivate the litigation or affect a party's right to relief, "courts have frequently rejected the notion that immigration status is itself important enough evidence of [a plaintiff's] broader credibility to be discoverable." *Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540, 555–56 (5th Cir. 2016) (footnotes omitted).

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004) is instructive. In that Title VII employment case alleging disparate impact discrimination based on national origin, a magistrate judge issued a protective order and barred all discovery as to the immigration status of the 23 plaintiffs. The district court denied NIBCO's Rule 72(a) motion, holding that the magistrate judge's ruling was neither clearly erroneous nor contrary to law.[17] On interlocutory appeal, the Ninth Circuit affirmed:

> Granting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker,

---

[17] Federal Rule of Civil Procedure 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

> documented or undocumented, reports illegal practices or files a Title VII action. Indeed, were we to direct district courts to grant discovery requests for information related to immigration status in every case involving national origin discrimination under Title VII, countless acts of illegal and reprehensible conduct would go unreported.
>
> Even documented workers may be chilled by the type of discovery at issue here. Documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding. Any of these individuals, failing to understand the relationship between their litigation and immigration status, might choose to forego civil rights litigation.

*Id.* at 1065 (footnote omitted). The chilling effect is no less here, where Plaintiff is suing members of local law enforcement—with ostensible ties to federal immigration authorities—as opposed to a private business.

County Defendants rely on Rule 608(b), which provides:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove **specific instances** of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of[ ] the witness[] . . ."

(Emphasis added.) But in the absence of County Defendants identifying "specific instances" of Plaintiff's conduct, reliance on this evidentiary rule, and the cases in which this manner of cross-examination has been allowed, is wholly misplaced. It simply does not inform the decision of whether a court should allow inquiry into a witness's immigration status in the first instance.

*United States v. Farias-Farias*, cited by County Defendants, explains a proper application of Rule 608(b). 925 F.2d 805 (5th Cir. 1991). Criminal defendant Farias

9

was arrested at the United States-Mexico border in El Paso, Texas, and charged with importation of marijuana and possession of marijuana with intent to distribute. *Id.* at 807. According to a customs agent, in response to questioning following his arrest, Farias stated that he had only one previous arrest for drunk driving. Fast forward to the trial where Farias testified in his own defense, denying any knowledge of the marijuana hidden in the vehicle he was driving and indicating, on cross-examination, that he told the customs agent that he had been arrested "two or three times or four." The government then called the customs agent, who testified that Farias told him of only one arrest. *Id.* at 808–09. On Farias' appeal of his conviction, the court found this inquiry of the customs agent to be proper under Rule 608(b):

> During his direct testimony, [Farias] denied knowledge of the marijuana hidden in the Ranchero. He attempted to portray to the jury that he was a truthful person. Farias told the agents at the border he had no knowledge of the marijuana and he told the jury he had no knowledge of the marijuana. This attempted to give the jury the impression that he was telling the truth at the border and that he was telling the truth at trial. The government was entitled to try and show that Farias did not tell the whole truth at the border and consequently was not telling the truth at trial.

*Id.* at 809 (footnote and citation omitted).

County Defendants cite two excessive force cases in which cross-examination into a plaintiff's immigration status was allowed, but neither is remotely apposite. In *Bonilla v. Jaronczyk*, the trial court allowed corrections officers accused of excessive force to inquire into a specific instance of conduct on the part of the plaintiff, the use of false papers to reenter the United States illegally, to attack his character for truthfulness pursuant to Fed. R. Evid. 608(b)(1). 354 F. App'x 579, 583 (2d Cir. 2009) ("Any other references to Bonilla's immigration status occurred in the context of defendants' inquiry

into his prior convictions, evidence of which was admissible under Federal Rule of Evidence 609."). In *Hernandez v. Kelly*, the court allowed in the plaintiff's prior conviction for illegal reentry into the United States under *Rule 609(a)(1)*[18] as it relates to credibility, but concomitantly ruled that defendants' request to introduce through Rule 608(b)(1) other evidence of the plaintiff's illegal status—overstay of a visa—was denied as "cumulative and unnecessary." No. 09-CV-1576 (TLM)(LB), 2011 WL 2117611, at *2, *3–4 (E.D.N.Y. May 27, 2011).

To summarize, the Court finds that Plaintiff's immigration status, legal or illegal, is not relevant to his civil rights claims. Also irrelevant is the immigration status of eyewitnesses Avila, Gomez, and Hernandez. But even if relevant, the Court concludes that Plaintiff is entitled to a protective order from any discovery that might reveal his (or the eyewitnesses's) immigration status, with the *in terrorem* effect of possible job loss, criminal prosecution, and deportation serving as the necessary "good cause." *See* Fed. R. Civ. P. 26(c)(1)(D). The public interest in allowing citizens and other persons to enforce their rights under Section 1983 substantially outweighs Defendants' interest in testing Plaintiff's (or the eyewitnesses's) credibility. *See, e.g., Rengifo*, 2007 WL 894376, at *3. This protective order prohibits further inquiry about a witness's citizenship, whether he or she has a social security number, a driver's license or other form of government identification, and the name of his or her employer. However, at trial Plaintiff will not be permitted to testify that he could not work for the month following the injury he sustained at the Inner Circle nightclub. Although such testimony would be offered only in support of the seriousness of the injury Plaintiff says he suffered, in the

---

[18] Titled "Impeachment by Evidence of a Criminal Conviction," Rule 609 sets forth the rules that "apply to attacking a witness's character for truthfulness by evidence of a criminal conviction[.]" Fed. R. Evid. 609(a).

absence of knowing the name of Plaintiff's employer, Defendants cannot verify this information and hence cannot cross-examine him effectively in this regard.

### B. Fifth Amendment Protection

While Plaintiff is entitled to a protective order regarding discovery directed toward his (and the eyewitnesses's) immigration status, his liminal motion is premature.

In addition to a protective order, Plaintiff also asks the Court to prohibit Defendants from: (1) asking questions on cross-examination that are intended—or by their nature likely—to cause Plaintiff or the eyewitnesses to invoke their Fifth Amendment rights against self-incrimination; (2) making any reference to the Fifth Amendment in any statement or argument to the jury; and (3) arguing to the jury that it may draw a negative inference as a result of any witness's invocation of his or her Fifth Amendment right. (Doc. 70 at PageID 1234–35.)

"When a witness claims his privilege, a natural, indeed an almost inevitable, inference arises as to what would have been his answer if he had not refused." *United States v. Maloney*, 262 F.2d 535, 537 (2d Cir. 1959). "If the prosecution knows when it puts the question that [the witness] will claim the privilege, it is charged with notice of the probable effect of his refusal upon the jury's mind." *Id.* Plaintiff understandably worries that a jury could draw an unfavorable, and constitutionally improper, inference based on his refusal to answer questions about his immigration status. And while the undersigned agrees with the general principle that Defendants should not be permitted to convert the Fifth Amendment right not to testify against oneself "from a shield to a sword," any ruling on this matter must come from the jurist assigned to preside over the trial. Accordingly, Plaintiff's liminal motion is denied without prejudice to renew before

the Honorable Susan J. Dlott at the appropriate juncture in accord with her Standing Order on Civil Procedures.[19]

## IV. CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for a Protective Order is **GRANTED**. No Defendant may further inquire, either at trial or otherwise in this litigation, into Plaintiff's (or any other witness's) immigration status, which would include questions about citizenship, a social security number, a driver's license or other form of government identification, and the name of his or her employer.[20] In tandem with this protective order, Plaintiff may not testify at trial regarding the length of any absence from work that he attributes to the injury he sustained at the Inner City nightclub. Because it is premature, Plaintiff's liminal motion regarding Fifth Amendment concerns is **DENIED WITHOUT PREJUDICE** to renew before the presiding judge.

**IT IS SO ORDERED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[19] http://www.ohsd.uscourts.gov/FPDlott
[20] As noted, this protective order expressly extends to nonparty eyewitnesses Luis Alonzo Avila, Juana Elia Gomez, and Dilcia Arias Hernandez.