**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| ALI PINEDA, | Case No. 1:15-cv-693 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J |
| v. | |
| RAYMOND BERRY, *et al.*, | |
| Defendants. | |

## REPORT AND RECOMMENDATIONS

This civil action is before the Court on Plaintiff Ali Pineda's Motion for Leave to Amend the Complaint and/or to Vacate Order (Doc. 57), and the parties' responsive memoranda (Docs. 67, 69.) Upon careful review, the undersigned finds that Plaintiff's Motion is well-taken.

## I.   BACKGROUND AND FACTS

In this civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff Ali Pineda accuses Hamilton County Sheriff's Deputies Roy Berry, William Cotton, and Gene Nobles ("County Defendants") of use of excessive force and failure to provide medical assistance. He alleges that, in the early morning of November 10, 2013, one of them struck him in the head with a baton in the course of breaking up a fight at the Inner Circle nightclub, where the deputies were working a private security detail. Pineda also sues PNA, Inc. ("PNA") doing business as Inner Circle.

## A. Procedural Posture

Plaintiff's original five-count Complaint was filed on October 26, 2015. (Doc. 1.) He sued Hamilton County, Hamilton County Sheriff James Neil, the Hamilton County Sheriff's Department, Hamilton County Deputy Sheriffs Raymond Berry, William Cotton, and Gene Nobles, PNA, Inc. doing business as Inner Circle, and Cincinnati Police Officer Jeffrey Gramke. (*Id.* at PageID 3–4 (¶¶ 6–14).) Count 1 alleged excessive use of force and a failure to protect in violation of Section 1983 against the County Defendants. (*Id.* at PageID 8–9 (¶¶ 32–37).) Counts 2, 3, and 4 alleged conspiracies in violation of Section 1983 and 42 U.S.C. § 1985(3) between Deputy Sheriffs Berry, Cotton, and Nobles and Cincinnati Police Officer Gramke to deny Plaintiff equal protection of the law on account of his race (Hispanic) and national origin (Honduran). (*Id.* at PageID 9–11 (¶¶ 38–53).) Count 5 alleged negligence against County Defendants and Inner Circle. (*Id.* at PageID 11 (¶¶ 54–57).) On March 14, 2016, Senior United States District Judge Sandra S. Beckwith granted the County Defendants' Rule 12(b)(6) motion to dismiss the Complaint, leaving PNA and Cincinnati Police Officer Gramke as the remaining Defendants. (*See* Doc. 13.) Counsel for Plaintiff and counsel for Police Officer Gramke thereafter consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c) in the Rule 26(f) Joint Discovery Plan they filed on April 4, 2016 (Doc. 15.)[1]

On April 11, 2016, Plaintiff filed a motion, pursuant to Rule 15(a), asking for leave to amend his Complaint with respect to his excessive use of force claim against Deputy Sheriffs Berry, Cotton, and Nobles and for leave to add a claim against the same

---

[1] Counsel for PNA did not participate in the Rule 26(f) conference. (Doc. 36 at PageID 211–12 (10:7–11:4), 222–23 (21:15–22:7).)

deputies under Section 1983 for failure to provide adequate medical care; and, pursuant to Rule 59(e), asking the Court to amend its judgment to reinstate his excessive use of force claim against all County Defendants.  (Doc. 22.)  After hearing oral argument, the undersigned granted Plaintiff's motion to amend from the bench.  (*See* 06/23/2016 Minute Entry.)[2]

Plaintiff timely filed his six-count Amended Complaint on July 6, 2016.  (Doc. 29.) Counts 1, 2, and 3 allege excessive use of force, a failure to protect, and a failure to provide medical assistance against Deputy Sheriffs Berry, Cotton, and Nobles.  (*Id.* at PageID 154–55 (¶¶ 30–35).)   Counts 4 and 5 allege a failure to supervise and ratification as to the deputy sheriffs' excessive use of force against the Hamilton County Sheriff's Department and Sheriff Neil.  (*Id.* at PageID 155–56 (¶¶ 36–42).)   Count 6 alleges a claim of negligence against PNA.  (*Id.* at PageID 156 (¶¶ 43–45).)[3]  County Defendants then filed a Notice of Non-Consent under 28 U.S.C. § 636(c) (Doc. 31), an Objection (Doc. 28) to the undersigned's order granting Plaintiff's motion to amend, and a motion to dismiss Plaintiff's Amended Complaint (Doc. 32.)

Finding that County Defendants had not "explicitly or implicitly" consented to the jurisdiction before a magistrate judge, on September 20, 2016 Judge Beckwith reassumed jurisdiction of this civil action and reviewed the undersigned's June 23, 2016 order as if it were a Report and Recommendation.[4]   (Doc. 37 at PageID 229.)   The Court first addressed Plaintiff's Rule 59(e) motion, which it declared moot.  To this end

---

[2] Counsel for County Defendants appeared at argument along with counsel for Plaintiff and counsel for remaining Defendants PNA and Cincinnati Police Officer Gramke.  (*See id.*)

[3] Cincinnati Police Officer Gramke is not named as a defendant in Plaintiff's Amended Complaint.

[4] Finding that the undersigned's order was addressed to a dispositive matter because it would revive claims previously dismissed by the Court, Judge Beckwith engaged in a de novo review pursuant to Rule 72(b).  (*Id.*)

the Court noted that, while its March 14, 2016 Order dismissed all claims against County Defendants, claims against PNA and Cincinnati Police Officer Gramke survived. No separate judgment was entered in favor of County Defendants,[5] and, accordingly, Rule 59(e) was not an appropriate means to challenge this non-final order. (Doc. 37 at PageID 229–30 (citing *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 517–18 (E.D. Ky. 2015).) With simply a Rule 15(a) standard in place, the Court then overruled County Defendants' Objection and concluded that justice required granting Plaintiff leave to amend his Complaint. (*Id.* at PageID 230–32.)

The Court turned next to County Defendants' motion to dismiss Plaintiff's Amended Complaint. It denied their motion with respect to Plaintiff's excessive use of force (Count 1) and deliberate indifference to serious medical needs (Count 3) claims, but granted it as to Plaintiff's failure to protect (Count 2), failure to supervise (Count 4), and failure to investigate/ratification (Count 5) claims. (*Id.* at PageID 232–38.) The Court also determined that the deputy sheriffs were not entitled to qualified immunity regarding the excessive force and deliberate indifference claims. (*Id.* at PageID 238–39.) In dismissing Count 5, the Court was guided by the principle that municipal ratification of an alleged constitutional violation can only occur through *an official with final decision-making authority*. (Doc. 37 at PageID 236 (citing *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016).) Because the Amended Complaint did not allege that the Sheriff *himself* was notified of Plaintiff's claim that a deputy had intentionally struck him on the head and, despite this notification, failed to investigate, the Court reasoned that Count 5 was appropriately dismissed. (*Id.* at PageID 237 (quoting *Brown*, 814 F.3d at

---

[5] A court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

462 ("Plaintiff does not name a final decisionmaker, but rather alleges that the Cleveland police department, as a whole, ratified the officers' conduct. This is insufficient to establish the requisite degree of culpability.") (internal citation omitted).) The Court concluded:

> [T]he amended complaint fails to allege facts showing that the Sheriff had actual or constructive knowledge that one or more [of] his deputies had allegedly used excessive force against Plaintiff. **Without a final decision-maker's actual or constructive knowledge of the alleged unconstitutional conduct**, there cannot be an official municipal policy amounting to ratification of the deputies' constitutional violation. Therefore, neither the Sheriff nor the County can be held liable under the theory that they ratified the deputies' alleged use of excessive force.

(*Id.* at Page 238 (emphasis added).)[6]

## B. Overview of Plaintiff's Pending Motion

Pursuant to Rules 15(a) and 54(b), Plaintiff now asks for relief from that portion of the Court's September 20, 2016 Order that dismissed from his Amended Complaint the failure to investigate/ratification claim (Count 5) against the Hamilton County Sheriff's Department and Sheriff Neil. Plaintiff asks to further amend his Amended Complaint to provide allegations of fact in support of this claim, arguing that his Motion is timely and predicated on evidence not available when County Defendants' motion to dismiss was decided. He argues additionally that allowing him to amend will not prejudice the ability of the Hamilton County Sheriff's Department and Sheriff Neil to defend against the claim. County Defendants oppose Plaintiff's Motion on the grounds that, procedurally, it is untimely and—because it gives the indication of adding a new party—would run afoul

---

[6] Upon the retirement of Judge Beckwith, on January 3, 2017 this civil action was transferred to the docket of the Honorable Susan J. Dlott. (Docs. 40, 41.)

of the statute of limitations.  Substantively, County Defendants contend that Plaintiff was

dilatory in asking to amend, and, in any event, his proposed amendment would be futile.

In response to County Defendants' memorandum, Plaintiff attaches to his reply

his Proposed Second Amended Complaint.  (Doc. 69-1.)  His proposed amended

paragraph 23 reads as follows:

> After being informed of Pineda's allegations, the Hamilton County
> Sheriff's Department and Sheriff Neil, through its and his official
> designee, Chief Deputy Mark Schoonover, initiated what was
> represented to be an investigation into this matter.  However, the
> investigation failed to include an interview of Mr. Pineda or any
> witnesses to the incident with the exception of the sheriff's deputies
> who participated in the event.  In reality, the investigation was never
> intended to determine what actually took place and as such was so
> unreasonably inadequate that it can be fairly characterized as a
> sham investigation.

(*Id.* at PageID 1225.)  Plaintiff's proposed amended paragraph 41, describing the basis

of his excessive force/ratification claim that he seeks to revive, states:

> The failure of Defendants Hamilton County Sheriff's Department
> and Sheriff Neil to conduct or require a legitimate investigation into
> the incident, and/or to counsel, retrain, or discipline officers Noble,
> Berry, and Cotton, and/or to repudiate the actions of these deputies
> on that occasion reflects the official policy, practice and custom of
> these Defendants of deliberate indifference to the use of
> unreasonable excessive force by the members of its department.

(*Id.* at PageID 1228–29.)  Notably Plaintiff does *not* seek to add a new party, effectively

mooting County Defendants' procedural arguments in opposition.[7]  (See Doc. 69-1 at

---

[7] For example, with no new party being added, Plaintiff's Motion does not run afoul of the two-year statute of limitations that governs his Section 1983 claims.  *See Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855–56 (6th Cir. 2003).  Plaintiff's original Complaint was timely filed on October 26, 2015 and named, among other Defendants, Sheriff Neil and the Hamilton County Sheriff's Department.  Plaintiff filed an Amended Complaint against these same Defendants on July 6, 2016, adding Count 5 now at issue.  County Defendants again moved to dismiss all claims alleged against them in the Amended Complaint, but they did not argue that any claim within the Amended Complaint was untimely.  Nor could they, as it is clear that Count 5 arises out of the "conduct, transaction, or occurrence" set forth in the original Complaint and hence relates back to it pursuant to Fed. R. Civ. P. 15(c)(1)(B).  *See L.V. v. City of*

PageID 1222 (¶¶ 6–12).) Hence the undersigned will analyze County Defendants' substantive arguments only.

## II. ANALYSIS

### A. Plaintiff's Motion is Permitted under Rule 54(b)

Federal Rule of Civil Procedure 54(b), governing "Judgment on Multiple Claims or Involving Multiple Parties," provides as follows:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties **only if the court expressly determines that there is no just reason for delay**. Otherwise, **any order or other decision**, however designated, **that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties** does not end the action as to any of the claims or parties and **may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities**.

(Emphases added.) Thus Rule 54(b), as well authority under common law, allows a district court to reconsider an interlocutory order and to reopen "any part of a case" before entry of final judgment. *Rhoades v. Blue Chip Prop. Mgmt. Inc.*, No: 1:07CV802, 2008 WL 3166242, at *1 (N.D. Ohio Aug. 4, 2008) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 & n.14 (1983) (observing that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Traditionally, courts will reconsider interlocutory orders when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Rhoades*, 2008 WL 3166242, at *1

---

*Maryville*, No. 3:16-CV-508, 2017 WL 4293233, at * 2 (E.D. Tenn. Sept. 27, 2017) (citing *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374–75 (6th Cir. 2015).)

(citing *Rodriguez*, 89 F. App'x at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998))).

The Court's September 20, 2016 Order that dismissed Count 5 (as well as Counts 2 and 4) of Plaintiff's Amended Complaint clearly was interlocutory, because no final judgment followed it. As such, the Court is free to reconsider it and does so based on the discovery of new evidence.

**B. New Evidence Discovered During the Schoonover and Minnich Depositions**

On August 30, 2017, Plaintiff deposed Chief Deputy Mark Schoonover, who reports directly to Sheriff Neil. (Doc. 65 at PageID 811, 816 (6:5–18), 817 (7:15–25).) Schoonover testified that he handles the "day-to-day operations of the entire Sheriff's Office" and is the "final decision maker" with respect to "implementation, conduct, and termination" of internal investigations into officer misconduct. (*Id.* at PageID 817 (7:22–25), 820 (10:7–18), 821 (11:18–21).)

Chief Schoonover was asked about the public records request that Plaintiff, through his counsel, made prior to bringing this lawsuit. (*Id.* at 890–94 (80:24–84:16); January 6th, 2014 Letter from Marc D. Mezibov to Hamilton County Sheriff's Department, Record Division, Doc. 65-4.) Among other things, that request asked for "[r]ecords of any internal investigation, including reports, witness[] statements, interview transcripts, and notes pertaining to the incident." (Doc. 65-4 at PageID 1005.) The Hamilton County Sheriff's Department Record Division responded "no report taken at this location on those dates."[8] (Id. at PageID 1006.) Schoonover explained, "The records section would have checked to see if there was what we call a NIBRS report

---

[8] The dates specified in the records request were "the evening of November 9th, 2013 through the morning of November 10th, 2013[.]" (Doc. 65-4 at PageID 1005.)

taken on this particular request. And that's – that's correct, there was none." (Doc. 65 at PageID 892 (82:4–7); *see id.* at PageID 894 (84:8–9).) But Schoonover also testified that the Sheriff's Office had received a letter "typed in Spanish and then handwritten [in English]" from Ali Jopnay Pineda Rodriguez, which he assigned to the Internal Affairs Section for an investigation. (*Id.* at PageID 837–38 (27:9–28:6); November 21, 2013 Memo from Sergeant Steve Minnich to Chief Deputy Mark Schoonover, Doc. 63-1.) Internal Affairs Section Investigator Sergeant Steve Minnich corroborated Schoonover's testimony. (Doc. 63 at PageID 687 (18:20).)[9] The text of the letter—dated November 15, 2013 and received November 21, 2013—was reprinted in a memo from Minnich to Schoonover, which read, in part, "Without warning the security guard punched me with his fist followed by the sheriff striking me with his night stick or baton on my head. Having received the impact of the strike of his uncontrollable wrath, a deadly impact leaving me unconscious on the ground almost dead." (Doc. 63-1 at PageID 736.) The memo also reprinted the "Incident Summary" bearing the same date of November 21, 2013 prepared by District Two Sergeant Darryl Morton of the Cincinnati Police Department for District Two Commander Captain Jeffrey Butler. (*Id.* at PageID 736–37, 740–41.)[10] In addition, the memo contained a summary of Minnich's January 10, 2014 interview with Defendant Cotton.[11] (*Id.* at PageID 737–38.)[12]

---

[9] Minnich's deposition was taken on August 24, 2017. (Doc. 63 at PageID 670.) At the time of the Internal Affairs investigation into the events of November 10, 2013 at the Inner Circle nightclub, Minnich held the rank of sergeant. (*Id.* at PageID 678 (9:6–9).) He had been promoted to lieutenant by the time he was deposed. (*Id.* at PageID 673 (4:3–4).) For consistency's sake, however, and not out of a lack of respect (*see* Doc. 67 at PageID 1205 n.2), the undersigned will continue refer to him as Sergeant Minnich.

[10] Sergeant Minnich testified that his supervisor, Lieutenant Bill Rarrick, gave him a copy of this "Incident Summary" that was sent directly from the City of Cincinnati to the Internal Affairs Section of the Sheriff's Department. (Doc. 63 at PageID 678 (9:6–24), 687–89 (18:20–20:8).)

[11] Sergeant Minnich's memo is clearly dated November 21, 2013. What is less clear from the record is when the memo actually was sent to Chief Schoonover given that it includes an interview that purportedly

Schoonover conceded during his deposition that while the Record Division accurately responded to Plaintiff's counsel that no "report"—meaning a NIBRS report—existed, there *was* an internal investigation "underway" at the time of counsel's public records request was made.  (Doc. 65 at PageID 894 (84:8–16).)  Thus, by August 30, 2017, Plaintiff became aware that Sheriff Neil's Chief Deputy had actual or constructive knowledge of the events of November 10, 2013 at Inner Circle nightclub, had commenced an investigation in response, and had not produced records responsive to his counsel's original public records request dated January 6, 2014.  (*See* Doc. 65 at PageID 890–94 (80:24–84:16); Doc. 65-4 at PageID 1005–06.)

## C. Plaintiff Has Acted with Due Diligence, No Undue Prejudice will Result, and the Proposed Amendment is Not Futile

A motion for leave to amend is addressed to the discretion of the court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In exercising its discretion, the court "should freely grant leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) reinforces "the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)).  However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).  In determining whether justice requires leave to amend, the court can consider whether allowing the amendment will result in undue prejudice to the opposing party and

---

took place six weeks in the future.  Regardless, Schoonover confirmed that he "had already received" Minnich's memo by the date of Plaintiff's public records request.  (Doc. 65 at PageID 894 (84:10–16).)

[12]A follow-up memo dated March 19, 2015 was sent by Sergeant Minnich to Chief Schoonover that summarized an interview with the head of security at Inner Circle night club and a telephone call to its owner confirming the lack of any video of the events of November 10, 2013.  (Doc. 63-1 at PageID 739.)

whether the moving party exhibits undue delay, bad faith, or a dilatory motive. *Foman*, 371 U.S. at 182. Further, the court may deny leave to amend where it appears that doing so would be futile. *Id.* "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).[13]

Leave to amend should be granted for several reasons. First, Plaintiff's Motion was filed on September 21, 2017, approximately three weeks after he took Chief Schoonover's deposition. This modest time lapse is commensurate with due diligence. Second, considering that Chief Schoonover and Sergeant Minnich already have been deposed and questioned extensively about the Internal Affairs Section investigation—or alleged lack thereof—Sheriff Neil and the Hamilton County Sheriff's Office will not be unduly prejudiced.[14] Third, to ascribe a dilatory motive to Plaintiff because of the "confusion" over his surname (*see* Doc. 67 at PageID 1207) would be heavy-handed. Plaintiff identified himself as "Ali Jopnay Pineda Rodriguez" in his November 15, 2013 letter sent to the Sheriff's Department and to the City of Cincinnati. But his counsel identified him simply as "Ali Pineda" in his two public records requests, and thus the electronic searches performed used "Pineda" as the key term. (Affidavit of Jessica

---

[13] The standard governing motions to dismiss is well-established. To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim for relief that is **plausible** on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14] While Plaintiff's Motion was pending, the period for discovery ultimately was extended to November 30, 2017. (*See* 09/25/2017 NOTATION ORDER.) The dispositive motion deadline of December 29, 2017 eventually was vacated, to be reset upon the resolution of this Motion and one other. (See 12/21/2017 NOTATION ORDER.) The undersigned would be willing to consider a request from any party for a brief reopening of discovery—related just to the reinstatement of Count 5—should the presiding judge adopt this Report and Recommendations.

Jones, Doc. 67-1 at PageID 1211–12.) The undersigned reads no deception in counsel's use of the apparent shortened form of Plaintiff's name.

Finally, and most importantly, reinstatement of Count 5 would not be a futile. As Plaintiff correctly maintains, "[u]nder appropriate circumstances, even a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated." *H.M. v. Bd. of Educ. of Kings Local School Dist.*, 117 F. Supp. 3d 992, 1007 (S.D. Ohio 2015) (quoting *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc)). But an act will be construed as "official policy" only when it is "of a body or an official 'responsible for establishing final government policy respecting such activity[.]'" *Holloway*, 220 F.2d at 773 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Indeed, Plaintiff's failure to allege that Sheriff Neil *himself* knew of Plaintiff's claim of use of excessive force by one of the deputies is the *very shortcoming* on which his previous ratification claim was dismissed by the Court. *See supra* pp. 4–5. This deficiency is now cured, however, with the inclusion of the new evidence discovered.

During his deposition, Chief Schoonover testified unequivocally that he serves as Sheriff Neil's official designee regarding investigations into officer misconduct, including accusations of use of excessive force. He acknowledged that he knew of Plaintiff's claim that he had been the victim of excessive force and, in response, directed the Internal Affairs Section—specifically Sergeant Minnich—to investigate. And Schoonover concurred with the recommendation by Minnich to "leave the case open until more evidence can be located." (Doc. 63-1 at PageID 738.)[15] Proposed

---

[15] Sergeant Minnich's memo concludes:

paragraph 23 names Chief Schoonover as final decision-maker for both the Sheriff's

Department and Sheriff Neil, highlights that the investigation did *not* include an interview

of Plaintiff or any witnesses to the events of November 10, 2013 with the exception of

Defendant Cotton, and pronounces it to be "so unreasonably inadequate that it can be

fairly characterized as a sham." (Doc. 69-1 at PageID 1225.) Proposed paragraph 41

alleges that the failure of the Hamilton County Sheriff's Department and Sheriff Neil "to

conduct or require a legitimate investigation into the incident" amounts to deliberate

indifference to the use of unreasonable excessive force, and, in turn, "ratification" of

same as alleged in proposed paragraph 42. (Id. at PageID 1228–29.) Based on the

law of this Circuit, Plaintiff's retooled Count 5 is eminently plausible. *Leach v. Shelby*

*Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) (sheriff ratified contract employee's

failure to provide appropriate medical care for paraplegic inmate by failing to investigate

and punish); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985) (sheriff ratified the

beatings of an arrestee by his deputies by failing to investigate and punish); *see Wright*

*v. City of Canton, Ohio*, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001) (police chief's

approval of an internal affairs investigation "not designed to discover what actually

happened" to arrestee who alleged use of excessive force by police officers amounts to

---

> Since this letter was received there has been no contact made with Mr.
> Rodriguez due to the fact that there is no telephone number or address where he
> can be contacted. This case will remain open until more evidence can be
> located.

(*Id.* at 738.) During his deposition taken on August 24, 2017, Minnich testified he made no efforts to follow-up with the Cincinnati Police Department to learn if there might be an incident report containing Plaintiff's contact information. (Doc. 63 at PageID 707–08 (38:23–39:8).) Further, he denied ever seeing the incident report completed on November 10, 2013 by Cincinnati Police Officer (and original Defendant) Jeffrey Gramke that listed Plaintiff's address and telephone number. (*Id.* at PageID 706–07 (37:17–38:22); *see* Doc. 59-1.)

ratification); *see also Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 861–64 (N.D. Ohio 2011) (same, citing *Wright*).[16]

For all these reasons, to ensure that Plaintiff's case is tried *fully* on the merits, the undersigned concludes that justice requires the grant of Plaintiff's Motion.

### III.    CONCLUSION

Consistent with the foregoing analysis, **IT IS RECOMMENDED THAT** Plaintiff Ali Pineda's Motion (Doc. 57) be **GRANTED**, such that:

1. The Court **VACATE** that portion of its September 20, 2016 Order that dismissed Count 5 of his Amended Complaint, the failure to investigate/ratification claim against the Hamilton County Sheriff's Department and Sheriff Neil; and

2.  The Court **GRANT** Plaintiff leave to file the Proposed Second Amended Complaint attached to his reply in support of his pending Motion (Doc. 69-1)[17] within fourteen days of any order adopting this Report and Recommendations.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[16] In his memorandum in support, Plaintiff cites extensively to the deposition transcripts of Chief Schoonover and Sergeant Minnich to support the proposition that "there are now ample grounds in the record to assert a plausible claim that the investigation into [his] allegations was so inadequate as to constitute a ratification of the deputies' unconstitutional actions." (Doc. 57 at PageID 315–17.)  Review of these purported falsehoods, inconsistencies, and incongruities would be improper at this juncture, where the Court need evaluate merely whether reinstatement of Count 5, as Plaintiff specifically proposes to amend it, would be futile.

[17] Plaintiff's Proposed Second Amended Complaint includes dismissed Counts 2 and 4, presumably to preserve the record should this matter eventually proceed to the Sixth Circuit Court of Appeals.  However, nothing in this Report should be understood as a recommendation that Judge Beckwith's ruling as to these counts be reconsidered.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALI PINEDA,

      Plaintiff,

vs.

RAYMOND BERRY, *et al.*,

      Defendants.

Case No. 1:15-cv-693

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendations ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).