UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALI PINEDA,                 Case No. 1:15-cv-693

    Plaintiff,                Dlott, J.
                                                         Bowman, M.J

    v.

RAYMOND BERRY, *et al.*,

    Defendants.

### REPORT AND RECOMMENDATIONS

This civil rights action is before the Court on Defendants' motions for summary judgment (Docs. 97, 106) and the parties' responsive memoranda (Docs. 115, 116). Upon careful review, the undersigned finds that Defendants' motions for summary judgment are well-taken.

**I.    RELEVANT FACTS[1]**

On November 10, 2013, around 10:00 pm or 11:00 pm, Plaintiff arrived at the Inner Circle Club.  (Doc. 76, Pineda Dep., PageID 1276). The Inner Circle Club is a nightclub in the East End of Cincinnati, Ohio. On Saturdays, the Inner Circle promoted "Hispanic Night", where the club played Latin music. Security inside the club was provided by civilian bouncers and outside security was provided by an off-duty detail agreement between the club and Hamilton County Sheriff's Office ("HCSO"). (Doc. 95, Cotton Dep., PageID 1433-34).

---

[1] The facts herein are gathered from the County Defendants' Proposed Undisputed Facts (Doc. 97-1) where admitted by Plaintiff (Doc. 115-1) and from deposition testimony. As required all reasonable inferences are drawn in favor of Plaintiff.

1

Around 2:30 am, shortly before the club was supposed to close, a dispute broke out in the club and bouncers started pushing people out of the club. (Doc. 74, Gomez Dep., PageID 1255-56; Doc. 114, Igwebe Dep., PageID 2006-09). Mr. Pineda was not involved in any fighting inside or outside the club. (Doc. 76, Pineda Dep., PageID 1286; Doc. 75, Hernandez Dep., PageID 1264; Doc. 73, Avila Dep., PageID 1248).

As Plaintiff was leaving, a security guard slapped him in the face, which chipped his tooth. (Doc. 76, Pineda Dep., at PageID 1285).[2]  Plaintiff described the man who chipped his tooth as "black." (Id. at 1287). Plaintiff then states he was struck in the back of the head by an individual, who he says was a Hamilton County Sheriff's Deputy. (Id. at 1286).

Mr. Pineda was transported to UC Hospital where he received medical treatment. (Pineda Dep., PageID 1286). Mr. Pineda sustained a severe head injury. (Pineda Dep., PageID 1289-90; Ex. 1, PageID 1292). He testified that he has no memory from the time he was struck until waking up at University of Cincinnati Hospital. (Doc. 76 at PageID 1286).  His last memory was of the slap in the face by the Inner Circle security guard. *Id.*

A friend of Plaintiff, Juana Elia Gomez, was at the Inner Circle Club the night of the incident. (Doc. 74 at PageID 1254). Plaintiff stated he had spoken with Ms. Gomez since the incident and told her that a Sheriff from Hamilton County had "beaten me up or hit me." (Doc. 76, Pineda Depo, at PageID 1284).

Ms. Gomez says she saw the whole incident of Plaintiff being injured, but did not see the Inner Circle Security Guard slap him in the face. (Doc. 74, Gomez Depo, at PageID 1257).  Ms. Gomez stated that "suddenly and without provocation" the deputy

---

[2] In Plaintiff's statement that he later provided to Cincinnati Police Officer Bellamah, he indicated the "security guard punched me with his fist." (Doc. 59-2).

2

drew his baton from his belt and struck Plaintiff from behind. (Doc. 96, Exh. 1, Gomez Affidavit at paragraph 6). Thereafter, Gomez testified that Plaintiff fell to the ground unconscious. (Doc. 74, Gomez Dep., at PageID 1257). Ms. Gomez attempted to perform CPR on Mr. Pineda but a Sherriff's deputy pushed her away. (Doc. 96, Exh. 1). No law enforcement personnel attempted to provide him any assistance. (Id.)

Another friend of Plaintiff, Luis Avila, also states that he was present at the Inner Circle Club on November 10, 2013 and that he witnessed the incident. (Doc. 73, Avila Depo, at PageID 1248). Avila witnessed someone, not sure if it was security or a police officer, hit Plaintiff on the back of the head. (Doc. 73, Avila Depo, at PageID 1249). Avila further stated in a sworn affidavit, "I did not hear the deputy say anything to Ali Pineda, nor did I hear Ali Pineda say anything to the deputy before the deputy struck him." (Doc. 96, Ex. 2, Avila Affidavit at paragraph 7). Additionally, Pineda's friend Ricardo Andino saw a "dark skinned Sheriff" strike Mr. Pineda. (Doc. 72, Andino Depo. at PageID 1241).

Hamilton County Sheriff's Deputies William Cotton, Gene Nobles and Roy Berry were working an off-duty detail on November 10, 2013 at the Inner Circle Club. (Doc. 95 Cotton Dep., PageID 1431). Deputy Cotton and Deputy Berry are African American and Deputy Nobles is Caucasian. (Id. at PageID 1440). Officers working off-duty details are paid directly by the entity requesting their presence and not the Hamilton County Sheriff's Office. (Doc. 65, Schoonover Dep., PageID 824-825).

Sergeant Darryl Morton, of the Cincinnati Police Department ("CPD"), was working District 2 on the night of the incident. (Doc. 60, Morton Dep., PageID 413). At approximately 2:43am a dispatch came over the radio from the Hamilton County Sheriff's Office requesting the assistance of the CPD. (*Id.* at PageID 413-414). Sergeant Morton

arrived quickly thereafter. (*Id.* at PageID 420). Upon his arrival, the Cincinnati Fire Paramedics were already at the scene treating Mr. Pineda. (*Id.* at PageID 423). Mr. Pineda was transported to the hospital by ambulance. Officer Gramke, of the Cincinnati Police Department, prepared an incident report based upon statements made by Plaintiff at UC Hospital. (Doc. 59, Ex. 1 at PageID 385).

Officer Stephanie Bellamah was assigned to follow up on the National Incident-Based Reporting System ("NIBRS") report of the incident prepared by Sergeant Gramke. (Doc. 59, Bellamah Dep., PageID 335). The NIBRS Report initially prepared by the Sergeant Gramke states, "Victim states the bouncer at the Inner Circle Bar assaulted him in the mouth for no reason causing a tooth to be chipped. Report was taken at UC Hospital by detail officer. Victim stated he consumed 7-8 Beers. Hamilton County Deputies were also on the scene." (Doc. 59-1 at Page ID 385). There is no mention in this initial Incident Report that Plaintiff told the Cincinnati Police Department he was struck by a Hamilton County Deputy. *Id.*

Thereafter, Officer Stephanie Bellamah spoke with Mr. Pineda, but was unable to determine how Mr. Pineda was injured as he was not able to identify which individual struck him. (Doc. 59, Bellamah Dep., PageID 370). Mr. Pineda provided a typed statement in Spanish with an accompanying hand-written translation in English to Officer Bellamah. (Id. at 338-339). Officer Bellamah informed her supervisor that an allegation was made that a sheriff deputy struck Mr. Pineda. (Id. at 344). Thereafter, the statement provided by Mr. Pineda was provided to the HCSO.

After receiving a copy of Mr. Pineda's hand-written translation of his statement, Chief Deputy Schoonover assigned the matter to the Internal Affairs Unit for investigation.

4

(Doc. 65, Schoonover Dep., Page ID 383, see also Doc. 59-2 at PageID 390). Officer Minnick investigated the report. He states that he was not able to contact Mr. Pineda because no contact information was provided to him. Because he did not have enough information to move forward with the investigation, he recommended that he remain open. (Doc. 63-1).

Chief Deputy Schoonover, as the final decision maker in the Sheriff's Office with respect to accepting the completion or conclusion of an investigation, concluded the investigation should remain open until more evidence could be located. (Doc. 65, Schoonover Dep., PageID 889).

Thereafter, this lawsuit ensued.

### A. Procedural Posture

This case has a long and abnormal procedural history. Plaintiff's original five-count Complaint was filed on October 26, 2015. (Doc. 1.) Mr. Pineda originally sued Hamilton County, Hamilton County Sheriff James Neil, the Hamilton County Sheriff's Office, Hamilton County Deputy Sheriffs Raymond Berry, William Cotton, and Gene Nobles, PNA, Inc. doing business as Inner Circle, and Cincinnati Police Officer Jeffrey Gramke. (*Id.* at PageID 3–4 (¶¶ 6–14).) Count 1 alleged excessive use of force and a failure to protect in violation of Section 1983 against the County Defendants. (*Id.* at PageID 8–9 (¶¶ 32–37).) Counts 2, 3, and 4 alleged conspiracies in violation of Section 1983 and 42 U.S.C. § 1985(3) between Deputy Sheriffs Berry, Cotton, and Nobles and Cincinnati Police Officer Gramke to deny Plaintiff equal protection of the law on account of his race (Hispanic) and national origin (Honduran). (*Id.* at PageID 9–11 (¶¶ 38–53).) Count 5 alleged negligence against County Defendants and Inner Circle. (*Id.* at PageID 11 (¶¶

54–57).) On March 14, 2016, Senior United States District Judge Sandra S. Beckwith granted the County Defendants' Rule 12(b)(6) motion to dismiss the Complaint, leaving PNA and Cincinnati Police Officer Gramke as the remaining Defendants. (*See* Doc. 13.) Counsel for Plaintiff and counsel for Police Officer Gramke thereafter consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c) in the Rule 26(f) Joint Discovery Plan they filed on April 4, 2016 (Doc. 15.)

On April 11, 2016, Plaintiff filed a motion, pursuant to Rule 15(a), asking for leave to amend his Complaint with respect to his excessive use of force claim against Deputy Sheriffs Berry, Cotton, and Nobles and for leave to add a claim against the same deputies under Section 1983 for failure to provide adequate medical care; and, pursuant to Rule 59(e), asking the Court to amend its judgment to reinstate his excessive use of force claim against all County Defendants. (Doc. 22.) After hearing oral argument, the undersigned granted Plaintiff's motion to amend from the bench. (*See* 06/23/2016 Minute Entry.)[3]

Plaintiff timely filed his six-count Amended Complaint on July 6, 2016. (Doc. 29.) Counts 1, 2, and 3 alleged excessive use of force, a failure to protect, and a failure to provide medical assistance against Deputy Sheriffs Berry, Cotton, and Nobles. (*Id.* at PageID 154–55 (¶¶ 30–35)). Counts 4 and 5 alleged a failure to supervise and ratification as to the deputy sheriffs' excessive use of force against the Hamilton County Sheriff's Office and Sheriff Neil. (*Id.* at PageID 155–56 (¶¶ 36–42)). Count 6 alleged a claim of negligence against PNA. (*Id.* at PageID 156 (¶¶ 43–45)).[4] County Defendants then filed a Notice of Non-Consent under 28 U.S.C. § 636(c) (Doc. 31), an Objection (Doc. 28) to

---

[3] Counsel for County Defendants appeared at argument along with counsel for Plaintiff and counsel for remaining Defendants PNA and Cincinnati Police Officer Gramke.
[4] Cincinnati Police Officer Gramke is not named as a defendant in Plaintiff's Amended Complaint.

the undersigned's order granting Plaintiff's motion to amend, and a motion to dismiss Plaintiff's Amended Complaint (Doc. 32.).

Finding that the County Defendants had not "explicitly or implicitly" consented to the jurisdiction before a magistrate judge, on September 20, 2016 Judge Beckwith reassumed jurisdiction of this civil action and reviewed the undersigned's June 23, 2016 order as if it were a Report and Recommendation.[5] (Doc. 37 at PageID 229.) The Court first addressed Plaintiff's Rule 59(e) motion, which it declared moot. To this end the Court noted that, while its March 14, 2016 Order dismissed all claims against the County Defendants, claims against PNA and Cincinnati Police Officer Gramke survived. No separate judgment was entered in favor of County Defendants,[6] and, accordingly, Rule 59(e) was not an appropriate means to challenge this non-final order. (Doc. 37 at PageID 229–30 (citing *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 517–18 (E.D. Ky. 2015).) With simply a Rule 15(a) standard in place, the Court then overruled County Defendants' Objection and concluded that justice required granting Plaintiff leave to amend his complaint. (*Id.* at PageID 230–32.)

The Court turned next to the County Defendants' motion to dismiss Plaintiff's amended complaint. It denied their motion with respect to Plaintiff's excessive use of force (Count 1) and deliberate indifference to serious medical needs (Count 3) claims, but granted it as to Plaintiff's failure to protect (Count 2), failure to supervise (Count 4), and failure to investigate/ratification (Count 5) claims. (*Id.* at PageID 232–38.) The Court also

---

[5] Finding that the undersigned's order was addressed to a dispositive matter because it would revive claims previously dismissed by the Court, Judge Beckwith engaged in a de novo review pursuant to Rule 72(b). (*Id.*)

[6] A court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

determined that the deputy sheriffs were not entitled to qualified immunity regarding the excessive force and deliberate indifference claims. (*Id.* at PageID 238–39.) In dismissing Count 5, the Court was guided by the principle that municipal ratification of an alleged constitutional violation can only occur through *an official with final decision-making authority.* (Doc. 37 at PageID 236 (citing *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016).) Because the amended complaint did not allege that the Sheriff *himself* was notified of Plaintiff's claim that a deputy had intentionally struck him on the head and, despite this notification, failed to investigate, the Court reasoned that Count 5 was appropriately dismissed. (*Id.* at PageID 237 (quoting *Brown*, 814 F.3d at 462 ("Plaintiff does not name a final decisionmaker, but rather alleges that the Cleveland police department, as a whole, ratified the officers' conduct. This is insufficient to establish the requisite degree of culpability.")) (internal citation omitted)). The Court concluded:

> [T]he amended complaint fails to allege facts showing that the Sheriff had actual or constructive knowledge that one or more [of] his deputies had allegedly used excessive force against Plaintiff. **Without a final decision-maker's actual or constructive knowledge of the alleged unconstitutional conduct**, there cannot be an official municipal policy amounting to ratification of the deputies' constitutional violation. Therefore, neither the Sheriff nor the County can be held liable under the theory that they ratified the deputies' alleged use of excessive force.

(*Id.* at Page 238 (emphasis added)).[7]

Thereafter, pursuant to Rules 15(a) and 54(b), Plaintiff sought relief from that portion of the Court's September 20, 2016 Order that dismissed from his amended complaint the failure to investigate/ratification claim (Count 5) against the Hamilton County Sheriff's Office and Sheriff Neil. Plaintiff further sought to again amend his

---

[7] Upon the retirement of Judge Beckwith, on January 3, 2017 this civil action was transferred to the docket of the Honorable Susan J. Dlott. (Docs. 40, 41.)

complaint to provide allegations of fact in support of this claim, arguing that his motion is timely and predicated on evidence not available when the County Defendants' motion to dismiss was decided.

The court granted Plaintiff's motion for leave to amend and also vacated the portion of the September 20, 2016 order that dismissed Count Five of the amended complaint, the failure to investigate/ratification claim against the Hamilton County Sheriff's Office and Sheriff Neil. Plaintiff then filed his second amended complaint. (Doc. 87).

The claims remaining against the County Defendants are Count 1, Excessive Force against the three named deputies in their individual and official capacities, Count 3, Failure to Provide Medical Care against the deputies in both capacities, and Count 5, Excessive Force/Ratification against Sheriff Jim Neil in his official capacity[8] and the Hamilton County Sheriff's Office. Plaintiff further asserts, at Count 6, claims against PNA, Inc. dba Inner Circle based on an alleged negligence in hiring the particular officer as well as a failure to supervise said officer in the performance of the officer's duties.

This matter is now before the Court on the County Defendants' motion for summary judgment. Also before the Court is Defendant PNA's unopposed motion for summary judgment. The Court held oral argument on the motions on February 20, 2019. At oral argument, the undersigned found that PNA's unopposed motion for summary judgment was well-taken and should be granted. Based on the pleadings and the arguments of the parties, the undersigned finds that the County Defendants' motion for summary judgment is also well-taken and should be granted.

---

[8] Plaintiff abandoned his claim against Sheriff Neil in his individual capacity. See Doc. 115, Footnote 2.

9

## II. Defendants' motion for summary judgment is well-taken

The County Defendants dispute that a Hamilton County Sheriff's Deputy caused Mr. Pineda's injuries. As such, they argue that there are undisputed facts that illustrate summary judgment in favor of all County Defendants is proper. Notably, Defendants contend that Plaintiff's 42 U.S.C. 1983 claim of excessive force fails as there are no facts indicating his injuries were caused by an individual acting under authority of state law. Defendants further argue that Plaintiff's claim of failure to provide medical care fails as there was no Constitutional duty to provide medical care for injuries caused by private parties. Finally, Plaintiff's claim against Sheriff Neil and the Hamilton County Sheriff's Office for ratification fails as an investigation was conducted and there is no evidence of a policy of allowing excessive force by Sheriff's Deputies.

Additionally, Defendants assert that Deputies Berry, Cotton, and Nobles are entitled to Qualified Immunity in their individual capacities as there is no evidence identifying any of the named deputies as the one who allegedly struck the Mr. Pineda in the back of the head.

Plaintiff, however, contends that the record in this matter at the very least establishes genuine issues of material fact as to whether the individual defendants Deputy Roy Berry, Deputy William Cotton, and Deputy Gene Nobles, as well as the institutional defendant, HCSO, violated Mr. Pineda's constitutional rights to be free from the excessive use of force, and to receive medical assistance for serious medical needs for injuries caused by the use of such excessive force.

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

### B. Plaintiff's claim under 42 U.S.C. § 1983

As noted above, Plaintiff brings claims for excessive force and failure to provide medical care in violation of his constitutional rights. "To state a claim under § 1983, the plaintiff ... must show that the alleged violation was committed by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001). To be liable under § 1983, the Defendant must have exercised power made possible "only because

11

[he was] clothed with the authority of state law." *Id.* at 533 (citations and quotation marks omitted).

*1. Excessive Force*

Plaintiff brings claims for excessive force against Deputies Berry, Cotton, and Nobles, in their individual and official capacities. The Fourth Amendment to the U.S. Constitution protects citizens from the excessive use of force when police make an arrest or seizure. *Graham v. 916 Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Excessive force claims under the Fourth Amendment are analyzed pursuant to an objective reasonableness test. *Id.* at 395–96; *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir.1994).

The County Defendants contend that the individual who Plaintiff alleges struck him in the back of the head was not acting under color of state law and thus no claim under 42 U.S.C. § 1983 can be maintained. When claiming damages for violations of constitutional rights, Plaintiffs "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir.2008).

The court agrees with Plaintiff that if a Sheriff's deputy, while on duty or while off duty but in uniform on a private detail, strikes a citizen with his baton on the back of the head unprovoked that this would be an excessive use of force. However, Plaintiff's claim is fatal in that neither he, nor anyone else, has specifically identified who it was that struck Plaintiff. Mr. Avila, stated that he was not sure if it was security or a police officer who hit Plaintiff on the back of the head but that it was a black man. (Doc. 73, Avila Dep., PageID 1249). Ms. Gomez stated that an officer struck Mr. Pineda. (Doc. 74, Gomez Dep.,

12

PageID 1257). Mr. Andino stated he saw a black sheriff strike Plaintiff. (Doc. 72, Andino Dep., PageID 1241-1242). Unfortunately, Plaintiff has no memory of the attack and did not see the assailant. (Doc. 76, Pineda Dep., Page ID 1286).

Deputy Nobles, who is white, testified that he never struck Plaintiff and that it was not until Mr. Pineda was on the ground that Deputy Nobles saw him. (Doc. 64, Nobles Dep., PageID 754). Deputy Berry testified that he saw Mr. Pineda laying on the ground and had no knowledge of how he ended up there. (Doc. 66, Berry Dep., PageID 1011). He did not strike him in the head, nor did he see anyone else strike him. (Id. at 1013). Deputy Cotton testified that he was inside the club and did not have a full visual of the scene. (Doc. 95, Cotton Dep., Page ID1438-1140, 1443).

There is no evidence in the record specifically identifying which of the three individual defendants, if any, struck Plaintiff in the back of the head. None of the witnesses have identified who struck Plaintiff and each deputy denies striking the Plaintiff. At oral argument, upon questioning by the court as to the identity of the individual who struck Plaintiff, Plaintiff's counsel argued that the witnesses could be asked to identify the individual who struck Plaintiff at trial. Unfortunately, such an in-court at-trial identification in a civil trial comes too late. (*See Neyland v. Molinaro*, 368 F. Supp. 2d 787, 791 (E.D. Mich. 2005)(summary judgment granted on excessive force claims where plaintiffs were unable to determine the identity of the officers through discovery and were unable to offer evidence regarding the identity of the officer who caused the alleged injury); *Ray v. Abington Twp.*, No. 02-4382, 2004 U.S. Dist. LEXIS 9821, at *5-7 (E.D. Pa. May 25, 2004)("where the Plaintiff cannot identify the alleged violators …, those officers cannot be held liable"),(partially vacated on other grounds at 2004 U.S. Dist. LEXIS 12768 (E.D.

Pa. July 6, 2004)); *but* s*ee Lindsey v. City of Pasadena*, No. CV 16-08602, 2017 U.S. Dist. LEXIS 215247, at *11 (C.D. Cal. Feb. 2, 2017)(in denying a motion to dismiss where Defendants alleged that there were no specific allegations against any particular officers the Court stated that "there is no indication that Plaintiffs would be unable to learn the identities of the currently unknown defendants through discovery. Access to police documents, such as reports of the incident filed by Officer Defendants, will presumably reveal the identities of the officers involved and the specific role that each officer played."). Here, discovery was completed and no identification has been made. Thus, Defendants are entitled to summary judgment on Count One.[9]

  2. *Failure to provide medical care*

Plaintiff further asserts that the County Defendants failed to provide medical treatment in violation of Plaintiff's constitutional rights.[10] Defendants argue, however, that the claim of failure to provide medical care fails as the state has no affirmative constitutional duty to "protect an individual against private violence" perpetrated by other citizens. *DeShaney v. Winnebago Cnty. Dept. of Social Servs.*, 489 U.S. 189, 197 (1989). *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1081–82 (S.D. Ohio 2013). The County Defendants contend that the deputies had no affirmative duty to take Pineda into

---

[9] The Defendants also argue that even if there was an identification of a deputy that the deputies were not acting under color of state law in that they were working an off-duty detail, did not flash a badge, did not identify themselves as a police officer, and did not arrest anyone. Plaintiff argues that the deputies were in uniform, drove their police cruiser to the nightclub and acted in a manner consistent with exercising official authority. The Court declines to address this argument in light of the holding above.

[10] Plaintiff also argues that Defendants failed to intervene to prevent the violation of Plaintiff's constitutional rights. Defendants correctly point out that this claim was dismissed and the Report and Recommendation allowing for the second amended complaint specifically set forth that the failure to intervene claim (Count 2) and the failure to supervise claim (Count 4) remained dismissed. The Report and Recommendation was adopted by Judge Dlott. (See Doc. 82, page 14, footnote 17; adopted at Doc. 86).

protective custody or to obtain medical assistance for him to address the harm inflicted by private citizens.

Notably, the Sixth Circuit has held that unless the police have a "special relationship" with the victim, the victim has no constitutional right to have the police provide medical assistance or intervene to protect him from the actions of private actors. *See Tucker v. Callahan*, 867 F.2d 909, 914 (6th Cir.1989) ("The failure to provide medical assistance is not actionable under § 1983 for the same reason that the failure to intervene in the fight is not: in neither case did the state actor cause the injury of which plaintiff complains."); *accord Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir.1993); *Foy v. City of Berea*, 58 F.3d 227 (6th Cir.1995); *Weeks v. Portage Cty. Exec. Offices*, 235 F.3d 275, 278 (6th Cir. 2000).

The deputies' agreement to assist the Inner Circle Club in clearing the parking lot does not create any special relationship with the Plaintiff. (*See Tucker, 867* F.2d 909, 914 (6th Cir.1989)) (no § 1983 liability where an on-duty officer sat by and watched as the plaintiff was severely beaten). More importantly, the record in this case indicates that Plaintiff was treated both at the scene by Cincinnati Fire paramedics and later at University of Cincinnati Hospital. As such, the County Defendants are entitled to judgment as a matter of law with respect to Count Three.

*3. Failure to Investigate*

Last, the claim that Sheriff Jim Neil, in his official capacity, and the Hamilton County Sheriff's Office ratified the alleged constitutional violation by not conducting a meaningful investigation must also fail. Even if Mr. Pineda was able to identify who struck him in the head, there is no ratification of any unconstitutional behavior by the deputies.

A ratification claim based on an inadequate investigation has two elements: (1) that a final municipal policymaker approved an investigation; and (2) that the investigation was so inadequate as to constitute a ratification of the alleged constitutional violation. *See Wright v. City of Canton*, 138 F.Supp.2d 955, 966 (N.D. Ohio 2001); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir.1985). Although the investigation may not have been an example of best investigatory practices, it was not so inadequate as to constitute ratification.

"In cases where an investigation has been conducted, courts have been reluctant to impose municipal liability based on a ratification theory." *Woodcock v. City of Bowling Green, Kentucky*, 2016 WL 742922, at *26 (W.D. Ky.); *Daniels v. City of Columbus*, 2002 WL 484622,at *6, (S.D. Ohio 2002). Here, the alleged actions of the deputy who allegedly struck Mr. Pineda were never ratified by the HCSO. An investigation was conducted and a final municipal policy maker kept the investigation open until more evidence could be gathered, including speaking with the complainant. (Schoonover Depo, Doc. 65 at PageID 889).

Upon Officer Bellamah's receipt of Mr. Pineda's statement wherein he alleges for the first time that he was hit in the back of the head by a Sherriff's deputy, she ensured that this information was passed on to the HCSO, who turned it over to Internal Affairs. Lieutenant Minnich of the Internal Affairs Unit was assigned to do an investigation. The investigation revealed that on the night in question no one told the Sheriff deputies working the detail, the City of Cincinnati Police Officers who responded to the scene, or the Cincinnati Fire Department EMT personnel who responded to treat Mr. Pineda that a Sheriff deputy struck Mr. Pineda. (See Doc. 63-1, PageID 740-741, 747). The first time

this information was relayed was by Mr. Pineda via a written statement to Officer Bellmah. Lieutenant Minnich did not have any contact information for Mr. Pineda and had hoped that he, or someone on his behalf would reach out to the HCSO to discuss the complaint. No one did and Lieutenant Minnich then determined that he did not have enough information to close the case nor to move forward so he recommended that the matter remain open. (Doc. 63, Minnich Dep., PageID 686).

Based upon the above, Sheriff Neil and the HCSO are entitled to judgment as a matter of law with respect to Count Five.

### C. Qualified Immunity

Last, notwithstanding the arguments outlined above, the County Defendants contend that they are immune from suit pursuant to the doctrine of qualified immunity. Because this Court is recommending granting summary judgment to the Defendants on the merits, it declines to further address the qualified immunity argument.

### III. CONCLUSION

Consistent with the foregoing analysis, **IT IS RECOMMENDED THAT** the County Defendants' motion for summary judgment (Doc. 97) should be **GRANTED**, Defendant PNA's motion for summary judgment (Doc. 106) be **GRANTED** and this matter be **TERMINATED** on the active docket of the Court.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALI PINEDA,

    Plaintiff,

vs.

RAYMOND BERRY, *et al.*,

    Defendants.

Case No. 1:15-cv-693

Dlott, J.
Bowman, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendations ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).